Michael Yancey III, NV # 16158
PRICE LAW GROUP, APC
5940 S Rainbow Blvd, Suite 3014
Las Vegas, NV 89118
P: (818) 600-5537
F: (818) 600-5464
E: michael@pricelawgroup.com
*Attorneys for Plaintiff*
*Demetrius J. Johnson*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DEMETRIUS J. JOHNSON,<br><br>  Plaintiff,<br><br>v.<br><br>TRANS UNION LLC,<br><br>  Defendant. | Case No.: 2:22-cv-1744<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Demetrius J. Johnson, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Trans Union LLC ("Trans Union").

## I.  INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against the Defendant Trans Union, a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer

1

report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II. JURISDICTION AND VENUE

1. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. Defendant transacts business here; as such, personal jurisdiction is established.

## III. PARTIES

4. Demetrius Johnson is a natural person residing in the city of Las Vegas in Clark County, Nevada.

5. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined

in 15 U.S.C § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their Registered Agent Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, IL 62703.

7. Upon information and belief, Defendant Trans Union, disburses consumer reports to third parties under contract for monetary compensation.

8. At all relevant times, Defendant Tans Union acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

9. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

## IV.   FACTUAL BACKGROUND

10. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

11. The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

12. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

13. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

14. The Defendant Trans Union report consumer information about Plaintiff and other consumers through the sale of consumer reports.

15. The CRA Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information:</u> this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16. The Defendant obtains consumer information from various sources, including furnishers that provide consumer information to the CRAs, and information the CRAs independently sources itself or through third party providers, vendors or repositories, including computerized reporting services like PACER.

17. Defendant routinely reports inaccurate, incomplete, outdated, and materially misleading information about consumers, without verifying or updating the information as required by § 1681(e)(b), despite possessing information that indicates their reporting is inaccurate.

18. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendant's reports.

19. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

20. The information reported by the Defendant contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in the CRA Defendant's consumer reports.

21. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

22. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

23. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

24. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

25. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

26. However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

27. In this case, Plaintiff specifically notified the Defendant that there was duplicate Account, but Defendant rejected this specific notice, despite the duplicate

1  accounts having the same open date, high balance amount, and the same original
2  creditor, Desert Realty Inc.

3  28.   Although Defendant was notified of its inaccurate reporting and had the
4  information necessary to correctly report Plaintiff's Account, the Defendant failed
5  to verify the information.

6  29.   Instead, Defendant followed unreasonable procedures that allowed
7  them to blindly rely on the furnisher's deficient investigation and report its results,
8  despite possessing conflicting information about the Account.

9  30.   Rather than following reasonable procedures to assure maximum
10 possible accuracy, Defendant inaccurately reported information regarding Plaintiff's
11 Account even if that information ignores or contradicts information known and
12 reported by the CRAs.

13 31.   Consumers have filed thousands of lawsuits and FTC and Consumer
14 Financial Protection Bureau complaints against the Defendant for its inaccurate
15 reporting following a consumer dispute.

16 32.   Therefore, the Defendant is on continued notice of its inadequate
17 procedures, including those that result in inaccurate account and payment statuses,
18 both before and after receiving a dispute from the consumer.

19 //
20 //

*Allegations Specific to the Credit Reporting of Plaintiff*

33. In or around March 2021, Plaintiff moved out of a rental property at the expiration of his lease.

34. In or around April 2021, Plaintiff received a notification from a credit monitoring service regarding a collection account from Allied Collection, account no. SVCSA33323 ("the Account").

35. After receiving notification regarding the Account, Plaintiff obtained his Experian, Equifax, and Trans Union consumer reports to ensure that Plaintiff's credit account tradelines were being reported accurately.

36. When reviewing his credit reports, Plaintiff discovered that all three CRAs were reporting the open collection Account and listed the original creditor as Desert Realty, Inc.

37. Thereafter, Plaintiff contacted Desert Realty, Inc. and discovered that the balance due was for charges incurred at the expiration of his March 2021 lease. Plaintiff was never notified of the alleged outstanding balances by Desert Realty, Inc. prior to receiving the notification from the credit monitoring service.

38. In July 2022, Plaintiff was revieing his credit and discovered that Defendant Trans Union was inaccurately reporting the Account on two separate tradelines, conveying to creditors/lenders that Plaintiff had two separate collection accounts.

39. The duplicate tradelines listed the same original creditor, Desert Realty, Inc, the same open date of April 20, 2021, and the same high balance of $450, thus putting Defendant Trans Union on notice that the accounts were for the same debt.

40. Notably, the other national consumer reporting agencies, Equifax and Experian, did not inaccurately report the Account like Trans Union.

*Plaintiff's Disputes*

41. On or about July 27, 2022, Plaintiff mailed a dispute letter to Trans Union disputing the inaccurate reporting of the Account.

42. The letter specifically advised that the Account was reporting twice on his credit report.

43. Upon information and belief, Trans Union forwarded Plaintiff's disputes to Allied Collection within 5 business days of receipt.

44. On or about August 12, 2022, Defendant Trans Union responded to Plaintiff's dispute and updated one of the two duplicate accounts and continued to report the second duplicate account.

45. Trans Union did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute form to Allied Collection despite possessing independent information that indicated the Account was reporting twice.

46. Although the Defendant Trans Union could have verified that the Account was a duplicate, they neglected to do so.

47. Rather than perform an investigation based on Plaintiff's dispute and on information known by Trans Union, Defendant merely parroted information furnished by Allied Collection that indicated the Account was an open collection account and ignoring the fact that it was reporting twice.

48. Defendant Trans Union's failure to report the Account accurately after receiving Plaintiff's dispute is particularly egregious because Trans Union knew the information it reported was factually inaccurate and conflicted with information contained in its own records

49. Defendant Trans Union's reporting of the Account is patently false/incorrect and therefore inaccurate.

50. If not patently false, Defendant Trans Union's reporting of the Account is materially misleading and therefore inaccurate.

51. Plaintiff specifically notified Defendant Trans Union that the Account was reporting twice, but Defendant Trans Union rejected this specific notice.

### *Plaintiff's Damages*

52. Upon information and belief, had the Defendant accurately reported the Account, Plaintiff's credit scores would have been better.

53. After Plaintiff's dispute, Plaintiff applied for a credit card with Apple/Goldman Sachs and was denied – due to the inaccurate reporting of the Account by Defendant.

54. Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Apple/Goldman Sachs by Defendant during the process of Plaintiff's credit application.

55. As a direct result of the CRA Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

56. Plaintiff sustained actual monetary damages from the expense of certified mail tracking of Plaintiff's disputes to Defendant.

57. As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendant's inaccurate reporting.

58. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

//

//

Case 2:22-cv-01744-CDS-NJK   Document 1   Filed 10/18/22   Page 12 of 16

## V. **COUNT I**
### Defendant Trans Union
### (Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*)

59. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. The FCRA requires consumer reporting agencies, like the Defendant, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

61. The Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

62. Additionally, the Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to report accurate information when placed on notice that the information Defendant are reporting is inaccurate, and/or otherwise contradicted by information known by Defendant or reasonably available to Defendant.

63. The Defendant inaccurately reported Plaintiff's Account with a duplicate tradeline.

64. The Defendant possessed information that indicated the Account was a duplicate account.

12

65. The Defendant knew or should have known of its obligations under the FCRA. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the Defendant from which it are on notice of their unreasonable procedures concerning the reporting of debts.

66. Even after Plaintiff notified the Defendant of the inaccurate information it included in Plaintiff's credit file, Trans Union continued to inaccurately report the Account as having a duplicate on Plaintiff's consumer report.

67. The Defendant failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher's investigation of the dispute and blindly reporting its results despite possessing conflicting information.

68. The Defendant also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to identify a duplicate account when the accounts contained identical data that should have put Trans Union on notice that both accounts were related to the same date.

69. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

70. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

71. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

72. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the Defendant violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after Plaintiff notified it of its inaccurate reporting of the Account.

73. Defendant Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

　　i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

　　ii. Failing to consider all relevant information while investigating Plaintiff's dispute.

　　iii. Failing to include all relevant information when notifying Allied Collection of Plaintiff's dispute.

74. Instead of reasonably reinvestigating Plaintiff's dispute, the Defendant continued to report the Account with a duplicate tradeline.

75. The CRA Defendant's acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

76. The CRA Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

77. Plaintiff suffers actual damages, including a decreased credit score, credit denial, loss of credit opportunities, and other financial harm caused by the Defendant inaccurately reporting the Account.

78. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

79. The Defendant is a direct and proximate cause of Plaintiff's damages.

80. The Defendant is a substantial factor in Plaintiff's damages.

81. Therefore, the Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Demetrius Johnson respectfully requests judgment be entered against Defendant for the following:

A. Declaratory judgment that Defendant violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

### VII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED this 18th day of October 2022.

*/s/Michael Yancey*
Michael Yancey III, NV # 16158
PRICE LAW GROUP, APC
5940 S Rainbow Blvd, Suite 3014
Las Vegas, NV 89118
P: (818) 600-5537
F: (818) 600-5464
E: michael@pricelawgroup.com
*Attorneys for Plaintiff*
*Demetrius J. Johnson*